**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

JERRY LAMONT BARNES,

    Petitioner,

v.                                                                  Civil Action No. **3:08CV840**

DANIEL A. BRAXTON,

    Respondent.

## MEMORANDUM OPINION

Jerry Lamont Barnes ("Petitioner"), proceeding *pro se*, filed this 28 U.S.C. § 2254 petition, challenging his convictions in the Circuit Court for the City of Hopewell ("the Circuit Court") for malicious wounding. Respondent has filed a motion to dismiss arguing that Petitioner's claims are without merit. Petitioner has replied. This matter is ripe for judgment.

### I. PROCEDURAL HISTORY AND PETITIONER'S CLAIMS

On July 20, 2005, Petitioner was indicted for malicious wounding in violation of Section 18.2-51 of the Virginia Code. Petitioner's trial was held on October 12, 2005. Petitioner's counsel objected to the prosecutor's use of peremptory strikes to remove the only two black jurors on the panel. The objection was overruled, and Petitioner was convicted and sentenced to a ten-year term of imprisonment. On January 9, 2007, the Court of Appeals of Virginia affirmed Petitioner's conviction. *Barnes v. Commonwealth*, No. 2589-05-2, 2007 WL 43613 (Va. Ct. App. Jan. 9, 2007) (hereinafter "Appellate Op."). On May 27, 2008, the Supreme Court of Virginia denied Petitioner's state habeas application. *Barnes v. Warden of the Augusta Corr. Ctr.*, No. 072574 (Va. May 27, 2008) (hereinafter "State Habeas Op.").

The following claims, which were both raised in Petitioner's state habeas application and rejected on the merits by the Supreme Court of Virginia, are raised in Petitioner's federal habeas petition:

Claim 1   Trial counsel rendered ineffective assistance by:

    (A) Failing to show that the prosecutor's use of peremptory strikes on the only two black jurors on the juror panel was racially motivated; and,

    (B) failing to argue that the jurors did not represent a fair cross-section of the population of the City of Hopewell.

Respondent argues that this Court cannot grant relief because the Supreme Court of Virginia's decision was not contrary to or based on an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts.

## II. THE APPLICABLE CONSTRAINTS UPON FEDERAL HABEAS CORPUS REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, this Court's warrant to grant relief by way of a writ of habeas corpus is circumscribed by 28 U.S.C. § 2254(d) and § 2254(e)(1). Section 2254(e)(1) provides that, "[s]tate court factual determinations are presumed to be correct and may be rebutted only by clear and convincing evidence." *Gray v. Branker*, 529 F.3d 220, 228 (4th Cir. 2008) (*citing* 28 U.S.C. § 2254(e)(1)). Under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

  (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). A decision is an "unreasonable application" of Supreme Court law if "the state court correctly identifies the governing legal principle . . . but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 407-08 (2000)). Demonstrating that a state court's decision is unreasonable requires overcoming "a substantially higher threshold" than simply demonstrating error. *Schriro v. Landigran*, 550 U.S. 465, 473 (2007) (*citing Williams*, 529 U.S. at 410).[1] "When assessing the reasonableness of the state court's application of federal law, the federal courts are to review the result that the state court reached, not whether [its decision] [was] well reasoned." *Larry v. Branker*, 552 F.3d 356, 365 (4th Cir. 2009) (alterations in original; internal quotations omitted).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that to demonstrate the ineffective assistance of counsel, a defendant first must show that counsel's representation was deficient and, then, must establish that the deficient performance prejudiced the defense. *See id.* at 687. To satisfy the deficient performance facet of *Strickland*, the defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (*quoting Strickland*, 466 U.S. at 689). Prejudice requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[1] In light of the foregoing statutory structure, the findings of the Supreme Court of Virginia and Circuit Court figure prominently in this Court's opinion.

3

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to "determine whether counsel's performance was deficient before examining the prejudice" issue. *Id.* at 697.

A. **Failure to prevail on the challenge to the Prosecutor's use of peremptory strikes**

The Supreme Court has held "[f]or more than a century" that "racial discrimination by the State in jury selection offends the Equal Protection Clause." *Georgia v. McCollum*, 505 U.S. 42, 44 (1992) (*citing Strauder v. West Virginia*, 100 U.S. 303 (1880)). Defendants do not have, however, the right to be tried by "a 'petit jury composed in whole or in part of persons of [their] own race.'" *Batson v. Kentucky*, 476 U.S. 79, 85 (1986) (*citing Strauder*, 100 U.S. at 305). Courts use a three-step process for evaluating claims of discriminatory exercises of peremptory challenges:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Golphin v. Branker*, 519 F.3d 168, 179 (4th Cir.) (*quoting Hernandez v. New York*, 500 U.S. 352, 358-59 (1991)), *cert. denied*, 129 S. Ct. 467 (2008).

A defendant must ultimately "show *both* that [the Government's proffered] reasons were merely pretextual *and* that race was the real reason for the strike." *United States v. McMillon*, 14 F.3d 948, 953 (4th Cir. 1994). Relief at step two is therefore appropriate only when the prosecutor's explanation establishes an equal protection violation as a matter of law. "Unless a

4

discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Hernandez*, 500 U.S. at 360.[2] If the prosecutor succeeds, however, the analysis moves on to step three. At the third step, courts consider "'how reasonable, or how improbable, the explanations are [] and . . . whether the proffered rationale has some basis in accepted trial strategy.'" *Golphin*, 519 F.3d at 180 (alterations in original) (*quoting Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)). A claimant "'may rely on *all relevant circumstances* to raise an inference of purposeful discrimination'" at the step three analysis. *Id.* at 179 (*quoting Miller-El*, 545 U.S. at 240).

During voir dire, Petitioner's counsel objected to the removal of jurors Pettaway and Brown. Joint Appendix, *Barnes v. Commonwealth*, No. 2589-05-2, 70-71 (Va. Ct. App. April 11, 2007) (hereinafter "J.A."). The Prosecutor responded:

> Judge, to be honest, I'm not sure whether they were the only two African-Americans on the jury or not. . . . I struck Ms. Brown because of her prior involvement in Dinwiddie Courts for the assault charge, and I had the feeling that my questions were irritating her and I was afraid I had alienated her about questioning her about that situation. . . . Ms. Pettaway I struck because Pettaway is a very familiar name in the Commonwealth's Attorneys Office. I'm not sure if she is related to them or not. Hopewell is a small town. I have had two Pettaways on my docket yesterday. I was concerned about her family's dealings with my office.

(J.A. 71-72.) The Court then inquired as to the prosecutor's motives:

---

[2] For example, "both age and occupation are legitimate, race-neutral reasons to strike a juror." *United States v. Whitfield*, 314 F. App'x 554, 556 (4th Cir. 2008) (No. 08-4335), *available at* 2008 WL 5070704, at *1. Moreover, the United States Court of Appeals for the Fourth Circuit has held that a court does not commit error by accepting as race-neutral the explanation that a juror "was struck because her last name was the same as someone the government's attorney had prosecuted from the same town." *United States v. Bynum*, 3 F.3d 769, 772 (4th Cir. 1993).

5

| | |
|---|---|
| The Court: | Was inquiry made as to whether or not you or someone in your family has been arrested or charged with a crime? |
| Prosecutor: | Yes. She said no. Well, she didn't answer. |
| The Court: | Well, she didn't give an affirmative and you didn't follow up on that; is that correct? |
| Prosecutor: | That's correct. And the reason I didn't follow up on it is there are many different Pettaways and I did not call specific names to follow-up on that. |
| The Court: | You could have followed up, however, and asked a general question, could you not? Ask privately has anyone in your family been arrested. |
| Prosecutor: | I let her answer with intent to strike her with my peremptory strikes. I was not intending to strike her for cause. |

(J.A. 72.) Petitioner's counsel responded that "we saw there were only two African-Americans on the jury, and we believe they should be sitting. They are not good reasons to be removing them." (J.A. 73.)

The Court found that the "pattern of strikes against jurors of one race" was "sufficient to raise a prima facie showing." (J.A. 73.) The Court continued:

> The burden then shifts to the Commonwealth to give a neutral explanation, and the issue is the facial validity of . . . the Commonwealth's explanation . . . . [U]nless a discriminatory intent is inherent in the explanation, then the reason is neutral, whether the Court agrees with it or not . . . . Turning first to juror Brown, the evidence on voir dire showed that juror Brown had been charged in another court with . . . . assault. . . .
> 
> . . . .
> It is not a pretextual reason. The Court will deny the motion on that. Turning to juror Pettaway, the Court does not believe that the reason given is pretextual. It is not a reason that inheres racial discrimination . . . . [T]he Court will likewise deny the motion on juror Pettaway.

(J.A. 73-75.) Petitioner's counsel objected to both rulings. (J.A. 75.)

6

The Court of Appeals affirmed the lower Court's ruling, accepting the Circuit Court's analysis of race-neutral explanation:

> Here, the prosecutor's reasoning for the peremptory strike related to Pettaway's last name. The prosecutor explained that, in light of Hopewell's small size and the Commonwealth's Attorney's office's familiarity with the name Pettaway, she was concerned that Pettaway might be related to the "many" Pettaways who had had dealings with the Hopewell Commonwealth's Attorney's office. Implicit in this explanation is the prosecutor's concern that Pettaway might have harbored a bias against the prosecution because of her family ties. That concern, according to the prosecutor's explanation, was based strictly on Pettaway's last name. Plainly, having the same last name as others who have been prosecuted by the Commonwealth's Attorney's office is not peculiar to any race. Likewise, concern about a potential juror's bias against the Commonwealth, based on family ties to criminal defendants, transcends the race or ethnic background of the juror. Thus, taken as true, the prosecutor's explanation indicates the peremptory strike was not based on the intention to exclude an African-American from the jury panel, but rather on the intention to exclude a potential juror whose impartiality may have been tainted by their family connections. Such reasoning would apply to exclude all similarly situated jurors regardless of their race. Additionally, the prosecutor's explanation was not manifestly based on impermissible generalizations or stereotypical assumptions regarding racial groups. We conclude, therefore, that the prosecutor's explanation was not inherently discriminatory. Hence, the trial judge correctly deemed it race neutral.

(Appellate Op. 7.) The Court of Appeals also found that Barnes had failed to show any purposeful discrimination:

> Moreover, Barnes failed to meet his burden of proving purposeful discrimination. After the prosecutor presented her explanation for striking Pettaway from the jury panel, Barnes's counsel made no attempt to show that the prosecutor's explanation was merely a pretext for a racially motivated strike. Instead, he argued solely that "[t]hey [were] not good reasons" for removing Pettaway. Having been provided no basis to conclude otherwise, the trial judge found that the prosecutor's explanation for striking

7

> Pettaway was not pretextual. Upon our review of the record, we cannot say that finding was clearly erroneous.
>
> Accordingly, we hold the trial judge did not err in overruling the defense's Batson objection to the prosecutor's use of a peremptory strike to remove Pettaway from the jury panel.

(Appellate Op. 7-8 (alterations in original).)

The Supreme Court of Virginia rejected Petitioner's claim of ineffective assistance on state habeas review, explaining that:

> Petitioner contends that counsel should have responded to the Commonwealth's assertion that it struck a juror because the juror's last name was Pettaway. The prosecutor asserted that Hopewell was small and that the Commonwealth's Attorney's office had been involved with multiple people named Pettaway in prior weeks. Petitioner contends that there was no evidence that potential juror Pettaway was, in fact, related to the Pettaway family to which the prosecutor referred.
>
> The Court holds that this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). Petitioner has proffered no evidence that the potential juror was excluded because of her race, or that the Commonwealth's use of peremptory strikes was pretextual. Furthermore, petitioner does not allege how a response by counsel would have resulted in a different outcome. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(State Habeas Op. 1-2).

Petitioner's current claim is identical in all relevant respects to that brought in his state habeas application. Petitioner does not allege the existence of any evidence of racial animus aside from that presented to and rejected by the state courts. He therefore fails to show that counsel rendered deficient performance. Moreover, Petitioner has not rebutted with clear and convincing evidence the state courts' findings that the prosecutor did not exercise his peremptory

8

strikes on the basis of race. *See Howard v. Moore*, 131 F.3d 399, 407-08 (4th Cir. 1997) (collecting cases). Claim 1(A) will be DENIED.

**B.     Plaintiff's Cross-Section Claim**

The Sixth Amendment requires that a defendant's jury be drawn from a venire representing a "'fair cross section of the community.'" *See Holland v. Illinois*, 493 U.S. 474, 480 (1990) (*quoting Taylor v. Louisiana*, 419 U.S. 522, 527 (1975)). In order to establish a *prima facie* case for a violation of the Sixth Amendment right to a jury venire that represents a "fair-cross-section" of the community, a defendant must show that: (1) the group allegedly excluded is a distinctive group within the relevant community; (2) the representation of this group in venires is not fair and reasonable relative to its size in the community; and (3) the underrepresentation results from the "systematic exclusion of the group in the jury-selection process." *See Duren v. Missouri*, 439 U.S. 357, 364 (1979).

The Supreme Court of Virginia rejected Petitioner's claim as follows:

> In another portion of claim (a), petitioner alleges he was denied the effective assistance of counsel because counsel failed to argue that petitioner was entitled to a selection of jurors representing a fair cross-section of the Hopewell population. Petitioner contends that "white jurors dominated the jury" and that blacks were "systematically excluded from the jury selection process."
> The Court holds that this portion of claim (a) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland. Petitioner fails to demonstrate that such a challenge was warranted or would have been successful. The United States Constitution does not require that a jury mirror the exact racial characteristics of the surrounding community. [Apodaca v. Oregon, 406 U.S. 404, 410 (1972)]. Furthermore, petitioner fails to offer any support for his allegation that the selection process systematically excluded a distinctive group. See Chichester v. Commonwealth, 248 Va. 311, 324, 448 S.E.2d 638, 647 (1994). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there

> is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(State Habeas Op. 2-3.) Petitioner's federal habeas petition similarly fails to show that any part of the jury selection process causes a systematic underrepresentation of African-Americans in Hopewell venires. Claim 1(B) will be DENIED.

Respondent's motion to dismiss (Docket No. 10) will be GRANTED. The petition for a writ of habeas corpus will be DENIED, and the action will be DISMISSED.

An appropriate Order shall issue.

/s/
Richard L. Williams
United States District Judge

Date: OCT 1 9 2009
Richmond, Virginia